ABEL AND MARY LOU KAPLAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kaplan v. Commissioner
Docket Nos. 46993-86, 31619-88
United States Tax Court
T.C. Memo 1994-81; 1994 Tax Ct. Memo LEXIS 82; 67 T.C.M. (CCH) 2258; February 24, 1994, Filed *82 Decisions will be entered for respondent. For petitioners: Bernard M. Kaplan. For respondent: Alan S. Kline. DAWSON, GOLDBERG
DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: These cases were consolidated for trial, briefing, and opinion, and were assigned to Special Trial Judge Stanley J. Goldberg pursuant to section 7443A(b)(4) and Rules 180, 181, and 183. [1] The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE GOLDBERG, Special Trial Judge: By separate notices of deficiency for each year, respondent determined deficiencies in petitioners' 1981 and 1982 Federal income taxes in the amounts of $ 23,296 and $ 21,359, respectively; increased interest on the deficiencies under section 6621(c); and an addition to tax under section 6661 in the amount *83 of $ 5,340 for taxable year 1982. In amended answers, respondent asserted that petitioners are liable for additions to tax under section 6653(a)(1) and (2) for both years. The issues for decision are: (1) Whether petitioners are entitled to deduct their distributable shares of losses attributable to a limited partnership interest of petitioner Abel Kaplan (petitioner) in Midcontinent Drilling Associates II (MCDA II or the partnership); (2) whether petitioners are liable for additions to tax for negligence under section 6653(a)(1) and (2); (3) whether petitioners are liable for the addition to tax for substantial understatement of income tax under section 6661(a) for taxable year 1982; and (4) whether petitioners are liable for increased interest under section 6621(c). FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners resided in Evanston, Illinois, when their petitions were filed. They filed joint Federal income tax returns for 1981 and 1982. The partnership activities of MCDA II for the taxable years 1981 and 1982 were considered by this Court in . All evidence received *84 and the findings of fact in Webb are included in the record of these consolidated cases by stipulation of the parties. Petitioner has a degree in accounting and has been in the real estate business for more than 40 years. His real estate activities include organizing partnerships for purchasing real estate and management of commercial properties, shopping centers, and apartment buildings. Petitioner had invested in other oil and gas partnerships and joint ventures prior to his investment in MCDA II. Petitioner first learned of the MCDA II program from his certified public accountant, Joseph A. Benjamin, who had received information about the partnership in the mail. In the fall of 1981, petitioner and Mr. Benjamin attended an MCDA II promotional meeting where they picked up a copy of the offering memorandum. Mr. Benjamin has no specialized knowledge of the oil and gas industry, and made no independent investigation of the MCDA II partnership. Petitioner relied on Mr. Benjamin's advice with respect to the tax and accounting aspects of his investment in MCDA II, but with respect to all other aspects of the investment, petitioner relied on his own business judgment and did *85 not seek advice from anyone else. Petitioner acquired his interest in MCDA II in December 1981, for the agreed subscription price of $ 150,000. He paid $ 10,000 down in 1981 and executed two promissory notes in the amounts of $ 10,000 each, due March 1, 1982, and March 1, 1983, respectively. Both of those notes were paid by petitioner. The balance of the purchase price, $ 120,000, was not due until January 15, 1994. The MCDA II offering memorandum of October 26, 1981, stated that the partnership was formed to engage in (1) a development drilling program in Tennessee and Oklahoma, (2) exploratory drilling in the Overthrust Belt in Utah, and (3) the acquisition of an exclusive sublicense to use, sell, and lease a new drilling product currently under development, the Terra-Drill, in Kansas and north and west Texas, and for exploratory drilling on its own exploration property. Petitioner's primary interest in MCDA II was the oil and gas drilling operations proposed in the offering property. Although he did not read the offering materials carefully, petitioner was aware of the Terra-Drill sublicensing aspect of the partnership's proposed activity. However, he did not consider it *86 an important factor in evaluating the potential profitability of the investment and stated at trial: "That was just the frosting on the cake. If that worked out, great; the deal was even better, but I went into this mainly for the oil and gas potential." The losses generated by the partnership were attributable in large part to the sublicense fees purportedly incurred in the acquisition of the Terra-Drill sublicense. Pursuant to a sublicense agreement for the Terra-Drill dated December 31, 1981, MCDA II was obligated to pay annual license fees in each of the fiscal years commencing October 1, 1982, 1983, and 1984, of approximately $ 8,000,000. A marketable Terra-Drill never existed, and no meaningful investigation into the economic merits of the sublicense agreement was attempted. We concluded in the Webb case that MCDA II did not engage in the exploratory drilling and Terra-Drill sublicensing activities with an actual and honest objective of making a profit. Petitioner does not have specialized knowledge or experience in oil and gas drilling or production, and did not consider himself qualified to evaluate MCDA II's developmental or exploratory drilling properties potential *87 oil and gas production. Nevertheless, he did not consult any experts in the field because, as he told the Court: "It was a $ 10,000 investment. I wasn't going to start hiring engineers." Respondent disallowed petitioners' deductions of their distributive shares of partnership losses for 1981 and 1982 on the ground that MCDA II's activities were not entered into for profit within the meaning of section 183. We found in the Webb case that the manner in which the partnership embarked upon and carried out its developmental drilling activities indicated the absence of a bona fide objective to make a profit, exclusive of tax savings. The partnership never conducted exploration drilling in the Overthrust Belt, and the developmental drilling plans set forth in the offering memorandum were largely abandoned. MCDA II represented that it would participate in developmental wells at a fixed cost on leases in Tennessee and in Lincoln County, Oklahoma. The partnership projected net earnings through 1995 from its developmental drilling program in the amount of $ 193,775,028. MCDA II never drilled wells in the prospect in Lincoln County, Oklahoma. Nor were any wells ever drilled by MCDA *88 II in the Tennessee prospect as designated by the promotional materials. MCDA II substituted partial working interests in other prospects in Oklahoma, Tennessee, Texas, Arkansas, Ohio, and Kansas. Respondent's expert witness in the Webb case, whose testimony we found credible, concluded upon review of the relevant reports and geological data that the majority of the prospects in which MCDA II participated had poor production potential. We held in Webb, on the basis of the entire record, that MCDA II did not enter into the developmental drilling activity with an actual and honest objective of making a profit. OPINION Petitioners urge us to reconsider our holding in Webb that the partnership losses are not deductible because the activities of MCDA II were devoid of any profit objective and lacked economic substance. We decline to do so. Petitioners offered nothing at trial that would lead us to find any facts pertinent to this issue that differ from our findings of fact in the Webb opinion. Accordingly, we hold that petitioner's distributive shares of the MCDA II partnership losses are not deductible in 1981 and 1982. Petitioners next argue that they are not *89 liable for the additions to tax for negligence under section 6653(a)(1) and (2). Respondent bears the burden of proof with respect to the additions to tax for negligence because they were first asserted in her amended answers. Rule 142(a). Petitioners contend that their deductions of losses related to petitioner's investment in MCDA II were not negligent because petitioner was a sophisticated and experienced investor in oil and gas ventures and real estate, and because petitioner relied upon his accountant, Mr. Benjamin, for advice concerning the tax aspects of his investment in MCDA II. Section 6653(a)(1) provides that if any part of any underpayment of tax is due to negligence or intentional disregard of the rules or regulations, there shall be added to the tax an amount equal to 5 percent of the underpayment. Section 6653(a)(2) provides for an addition to tax in the amount of 50 percent of the interest payable on the portion of the underpayment of tax due to negligence. Negligence is the lack of due care or failure to do what a reasonable and prudent person would do under the circumstances. . Under *90 some circumstances a taxpayer may avoid liability for the additions to tax under section 6653(a)(1) and (2) if reasonable reliance on a competent professional adviser is shown. However, reliance on professional advice is only one factor to be considered, and there must be a showing that the reliance was reasonable. Here petitioner knew that his accountant, Mr. Benjamin, had no expertise in the oil and gas industry, and that Mr. Benjamin had no more knowledge of the partnership's activities or profit potential than could be gleaned from the promotional materials and the "sales pitch" meeting he and petitioner attended together. On this record, we conclude that respondent has met her burden of proving that petitioner's reliance on Mr. Benjamin's tax advice was not reasonable and conclude that such reliance is not sufficient to shield petitioners from liability for the negligence additions to tax. Petitioner disregarded the impact of the Terra-Drill on the partnership's activities, even though the excessive sublicensing fees incurred by the partnership were a major factor in the losses reported by MCDA II. Petitioner also made no effort to independently investigate the general partners' *91 expertise in oil and gas matters. In Webb we found that the individuals in charge of the operation of MCDA II lacked the requisite experience or expertise in the oil and gas industry, and that the manner in which the developmental drilling program was conducted made it unlikely that such activity would generate sufficient revenues to net the obligations of MCDA II or generate profits on the investments of the partnership. On this record, we conclude that petitioner failed to adequately investigate MCDA II's operations or its potential for profit prior to investing and claiming deductions on petitioners' joint income tax returns, and hold that petitioners were negligent in deducting the losses from MCDA II. Respondent determined that petitioners are liable for the addition to tax for substantial understatement of income tax under section 6661(a) for taxable year 1982. In Webb, we held that MCDA II was a tax shelter, as defined by section 6661(b)(2)(C)(ii). With respect to returns filed after December 31, 1982, section 6661(a) imposes an addition to tax equal to 25 percent of any underpayment attributable to a substantial understatement of income tax. . *92 An understatement is substantial if it exceeds the greater of 10 percent of the amount required to be shown on the return for the taxable year or $ 5,000. Sec. 6661(b)(1). An understatement is the amount by which the amount required to be shown on the return exceeds the amount actually shown on the return. Sec. 6661(b)(2). Petitioners' case meets this threshold requirement. If a taxpayer has substantial authority for the tax treatment of a tax shelter item on his return and reasonably believed his tax treatment of the item was more likely than not the proper tax treatment, the understatement is reduced by the amount attributable to such item. Sec. 6661(b)(2)(B)(i). Petitioner made only a cursory review of the offering materials insofar as the economic aspects of the partnership were concerned. In December 1981, petitioner invested $ 10,000 in MCDA II and claimed a deduction on petitioners' 1981 joint income tax return for his distributive share of the partnership loss in the amount of $ 39,600. In 1982, he invested an additional $ 10,000 in MCDA II and claimed a $ 42,968 deduction on petitioners' tax return for that year. The sizeable tax benefits claimed for relatively *93 small cash outlays, together with petitioner's failure to adequately investigate what purportedly was a total investment of $ 150,000, indicate that petitioner's overriding concern was the tax benefits to be gained from his investment in the partnership. In sum, petitioner did not make the kind of independent factual analysis of MCDA II that would enable him to formulate a reasonable belief as to the tax treatment of the item and to determine whether the claimed deduction was more likely than not the proper tax treatment. Further, respondent did not abuse her discretion in failing to waive some or all of the addition to tax, nor did petitioners request such a waiver. Sec. 6661(c); . We hold that petitioners are liable for the section 6661 addition to tax for taxable year 1982. For the reasons discussed herein and in the Webb opinion, we hold that underpayments of tax resulting from disallowance of deductions attributable to MCDA II are attributable to a tax motivated transaction, and therefore are subject to section 6621(c). Accordingly, we hold that petitioners are liable for the increased rate of *94 interest pursuant to section 6621(c). Decisions will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩